**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN WESTERN HOME | : | |
| INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DONNELLY DISTRIBUTION, INC., | : | No. 11-1415 |
| Defendant. | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                     **August 2, 2011**

Sharon Swanlund sued Defendant Donnelly Distribution, Inc. ("Donnelly") in the
Philadelphia County Court of Common Pleas, alleging she was injured when she tripped on one of
Donnelly's plastic bundling ties that was left on the street near her home.  In the instant action,
Plaintiff American Western Home Insurance Company ("American Western"), Donnelly's insurer,
seeks a declaratory judgment that it has no duty to defend or indemnify Donnelly in connection with
that lawsuit.  Currently before the Court is American Western's motion for judgment on the
pleadings, or in the alternative, summary judgment.  For the reasons stated below, the Court denies
American Western's motion and grants summary judgment in favor of Donnelly.

## I.      BACKGROUND

### A.      The Underlying Swanlund Litigation

On November 9, 2007, Swanlund filed a negligence action against Donnelly in the Court of
Common Pleas for Philadelphia County.  (Pl.'s Mot. for Summ. J. Ex. B [Civil Complaint].)
Swanlund alleges that on May 24, 2006, she was crossing the street near her house in Philadelphia
when, "as she stepped onto the pavement at 5353 Saul Street, she was caused to trip and stumble

when her foot became entangled in one of the defendant Donnelly's plastic ties, causing her . . . severe and permanent injuries."  (*Id.* ¶ 6.)  According to the complaint, the plastic ties came from bundles of newspapers Donnelly had delivered to a nearby location.  (*Id.* ¶¶ 4-5.)  The bundles of papers Donnelly delivers "are secured by loops of plastic ties . . . which the defendant's employees remove at the delivery location and are left by them on the sidewalk and strewn by the employees, by others, or by weather conditions, throughout the neighborhood."  (*Id.* ¶ 5.)  Donnelly's alleged negligence consisted of:

> a. Failing to have due regard for the right, safety, and position of pedestrians lawfully on the streets and sidewalks of the surrounding areas;
> b. Failing to properly and lawfully secure and/or dispose of the plastic ties;
> c. Failing to properly supervise, train, and instruct their employees on the proper disposition of the plastic ties and like items; and
> d. Permitting or allowing their employees to improperly dispose of the plastic ties.

(*Id.* at  ¶ 7.)   Donnelly tendered its defense to American Western, who appointed counsel subject to a reservation of rights.  (Pl.'s Statement of Material Facts ¶ 5.)

**B.     The American Western Insurance Policy**

American Western issued a commercial liability insurance policy to Donnelly, with effective dates of January 3, 2006 to January 3, 2007.  The policy provides coverage limits of $1,000,000 per occurrence and $2,000,000 in the aggregate.  (Def's Mot. Ex. A [Insurance Policy].)   Section I of the policy provides:

> We [American Western] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies.  We will have the right and duty to defend the insured [Donnelly] against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance

does not apply.

"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person . . . ." (*Id.*) The policy contains two relevant exclusions. First, the policy applies only to injuries "arising out of the ownership, maintenance or use" of 1301-05 North Howard Street, Philadelphia, PA 19122, and operations necessary or incidental to that premises. (*Id.*)

Second, the policy contains an exclusion for "designated professional services." (*Id.*) The "description of professional services" schedule contains a single entry for "Paper Distributor." Under this exclusion, "[w]ith respect to any professional services shown in the Schedule, this insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' due to the rendering or failure to render any professional service." (*Id.*)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A

3

court may not make credibility determinations or weigh the evidence in making its determination.

*See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

In some instances, a district court may exercise its discretion to grant summary judgment sua sponte.   *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 223-25 (3d Cir. 2004).  As the Third Circuit has observed, it is

> entirely appropriate for courts to recognize a procedure allowing them
> to grant summary judgment on their own initiative, for courts'
> resources are limited and they should not be required to use those
> resources to conduct an unnecessary trial merely because a party
> entitled to a summary judgment in whole or in part does not seek that
> outcome to litigation.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 224 (3d Cir. 2009).  "[A] party has sufficient notice before a summary judgment is entered against it if it had reason to believe that the court might reach the matter at issue on the pending summary judgment application and the party had an opportunity to support its position fully." *Id.* at 223.  Granting summary judgment sua sponte is appropriate when the issue is purely legal and the record is fully developed.  *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, App. A. Nos. 10-2779 and 10-2780, 2011 WL 2489738, at * 4 (3d Cir. June 23, 2011).

## III.    DISCUSSION

### A.    Applicable Law

Under Pennsylvania law, the interpretation of the scope of coverage of an insurance contract is a question of law for the court.  *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).  "The goal of

4

insurance contract interpretation is to ascertain the intent of the parties as manifested by the language of the policy." *Scottsdale Ins. Co. v. City of Easton*, 379 F. App'x 139**,** 143 (3d Cir. 2010).  When the language of a policy is unambiguous, the court must give effect to that language, but ambiguous language is to be construed against the insurer. *Erie Ins. Exch. v. Conley*, No 1143 WDA 2010, 2011 WL 3129388, at *2 (Pa. Super. Ct. July 27, 2011).  The insured bears the initial burden to show that a claim falls within the policy's coverage, but if the insured meets that burden, the insurer must demonstrate that a policy exclusion excuses the insurer from providing coverage. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009).

In determining whether an insurer owes a duty to defend or indemnify, the court must compare the language in the underlying complaint with the language in the policy. *Id.* at 110.  An insurance company has a duty to defend "when the complaint filed by the injured party may potentially come within the policy's coverage." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985).  "[T]he factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir.1999).  A duty to defend "also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997).

## B.    The Policy Exclusions

The parties do not dispute that absent the application of an exclusion, the policy would cover the negligence claim in the underlying lawsuit.  However, American Western asserts that the two exclusions preclude any obligation to defend or indemnify.

5

1.      *The premises exclusion*

American Western contends that it has no duty to defend Donnelly because the premises exclusion precludes coverage for any of Donnelly's activities outside of its 1301-05 North Howard Street location, including Swanlund's accident.  The Court disagrees.  The premises exclusion states that coverage only applies to "'bodily injury,' 'property damage,' [or] 'personal injury' and medical expenses *arising out of* the ownership, maintenance, or use" of the Howard Street location; the exclusion does not say that only events occurring at that location are covered. (*See* Insurance Policy.) Construing both Swanlund's allegations and the language of the exclusion in favor of Donnelly, Swanlund's accident potentially "arose out of" Donnelly's activities at 1301-05 North Howard Street.  As Donnelly points out, "1301-05 N. Howard Street . . . is directly involved with Donnelly's distribution business."  (Def.'s Opp. to Pl's Mot. 5.)  Accordingly, American Western may not disclaim a duty to defend based on the premises exclusion.  *See UPS Freight v. Nat'l Union Fire Ins. Co. of Pittsburgh,* App. A. Nos. 08-4350, 08-4421, and 08-4422, 2011 WL 1659350, at *5 (3d Cir. May 3, 2011) (holding that an  "arising out of"  premises exclusion did not limit coverage to a defined area, noting that "arising out of" means "causally connected with," such that "but for causation, i.e., a cause and result relationship, is enough to satisfy this provision of an insurance policy") (quoting *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa.1961)).  In construing this exclusion against American Western, it is sufficient that Donnelly's allegedly negligent activities may have had a connection with the subject premises.  *See Air Prods. & Chems., Inc. v. Hartford Accident & Indemn. Co.*, 25 F.3d 177, 179 (3d Cir. 1994).

2.      *The professional services exclusion*

Next, American Western argues that Swanlund's allegations involve the distribution of

circulars, and that activity is covered by the term "Paper Distributor" under the professional services exclusion.  Therefore, her claim is specifically excluded from coverage, and American Western has no duty to defend or indemnify.

However, Swanlund's allegations demonstrate that Donnelly's complained-of activities may fall outside of the exclusion.  The policy does not define "professional services," but the Third Circuit has provided the following guidance regarding the term:

> Something more than an act flowing from mere employment or vocation . . . the act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "professional" means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

*Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 984 (3d Cir. 1988) (collecting cases).

The underlying complaint alleges that Donnelly employees left plastic ties remaining on the street after they delivered the papers, creating a hazard for pedestrians.  (Civil Complaint ¶¶ 5, 7.) This activity is "physical or manual," rather than "predominantly mental or intellectual." *Cf. Harad*, 839 F.2d at 984 (holding that a professional services exception applied to a lawsuit against an attorney for malicious prosecution); *Cincinnati Ins. Co. v. Stonebridge Fin. Corp*, Civ. A. No. 10-4131, 2011 WL 2549975, at *6 (E.D. Pa. June 23, 2011) (holding that a professional services exception applied where a financial institution was sued regarding loan commitment agreements).

Furthermore, even if the underlying complaint's allegations encompass some activities that could be categorized as "professional," such as managerial activities, "[w]here an underlying

7

complaint against the insured raises both covered and non-covered claims, the insurer must defend the entire action until the insurer proves that no underlying claim is covered by the policy." *Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 452 (M.D. Pa. 2007) (citing *Allen*, 692 A.2d at 1095). Accordingly, the professional services exclusion does not excuse American Western from defending or indemnifying Donnelly. *See Air Prods. & Chems.,* 25 F.3d at 179 (holding that when the allegations in the underlying complaint "may or may not fall within [an] exclusion . . . the insurer is required to defend.").

## IV.    CONCLUSION

Because neither exclusion applies, American Western has a duty to both defend and indemnify Donnelly in connection with the Swanlund lawsuit. Having the complete record before it, the Court denies American Western's motion and grants summary judgment in favor of Donnelly. *See Allstate Prop. and Cas. Ins. Co. v. Filachek*, Civ. A. 10-3634, 2011 WL 2111219, at *1 (E.D. Pa. May 25, 2011) ("[I]n determining whether an insurer has a duty to defend, a court examines only the factual allegations made in the complaint, and cannot consider additional information which may come to light in discovery."). An appropriate Order will be docketed separately.