IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN WESTERN HOME INSURANCE COMPANY, | : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| DONNELLY DISTRIBUTION, INC., | : | No. 11-1415 |
| Defendant. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                                   September 14, 2011

      Sharon Swanlund sued Defendant Donnelly Distribution, Inc. ("Donnelly") in the Philadelphia County Court of Common Pleas, alleging she was injured when she tripped on one of Donnelly's plastic bundling ties that was left on the street near her home. In the instant action, Plaintiff American Western Home Insurance Company ("American Western"), Donnelly's insurer, seeks a declaratory judgment that it has no duty to defend or indemnify Donnelly in connection with that lawsuit. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court denies American Western's motion and grants Donnelly's motion for summary judgment.

**I.    BACKGROUND**

    **A.    The Underlying Swanlund Litigation**

      On November 9, 2007, Swanlund filed a negligence action against Donnelly in the Court of Common Pleas for Philadelphia County. (Pl.'s Mot. for Summ. J. Ex. A [Civil Complaint].) Swanlund alleges that on May 24, 2006, she was crossing the street near her house in Philadelphia when, "as she stepped onto the pavement at 5353 Saul Street, she was caused to trip and stumble

when her foot became entangled in one of the defendant Donnelly's plastic ties, causing her . . . severe and permanent injuries." (*Id.* ¶ 6.) According to the Complaint, the plastic ties came from bundles of newspapers Donnelly had delivered to a nearby location. (*Id.* ¶¶ 4-5.) The bundles of papers Donnelly delivers "are secured by loops of plastic ties . . . which the defendant's employees remove at the delivery location and are left by them on the sidewalk and strewn by the employees, by others, or by weather conditions, throughout the neighborhood." (*Id.* ¶ 5.) Donnelly's alleged negligence consisted of:

> a. Failing to have due regard for the right, safety, and position of pedestrians lawfully on the streets and sidewalks of the surrounding areas;
> b. Failing to properly and lawfully secure and/or dispose of the plastic ties;
> c. Failing to properly supervise, train, and instruct their employees on the proper disposition of the plastic ties and like items; and
> d. Permitting or allowing their employees to improperly dispose of the plastic ties.

(*Id.* at ¶ 7.) Donnelly tendered its defense to American Western, who appointed counsel subject to a reservation of rights. (Pl.'s Statement of Material Facts ¶ 5; Pl.'s Mot. for Summ. J. Ex. C [Reservation of Rights letter].) A settlement was reached in the Swanlund action on August 18, 2011. (Def.'s Mot. for Summ. J. Ex. B [Docket Report].)

    **B.**    **The American Western Insurance Policy**

American Western issued a commercial liability insurance policy to Donnelly, with effective dates of January 3, 2006 to January 3, 2007. The policy provides coverage limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. (Def.'s Mot. for Summ. J. Ex. C [Insurance Policy].) Section I of the policy provides:

> We [American Western] will pay those sums that the insured becomes legally

obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured [Donnelly] against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person . . . ." (*Id.*) The policy contains two relevant exclusions. First, the policy applies only to injuries "arising out of the ownership, maintenance or use" of 1301-05 North Howard Street, Philadelphia, PA 19122, Donnelly's principal place of business, and operations necessary or incidental to that premises. (*Id.*)

Second, the policy contains an exclusion for "designated professional services." (*Id.*) The "description of professional services" schedule contains a single entry for "Paper Distributor." Under this exclusion, "[w]ith respect to any professional services shown in the Schedule, this insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' due to the rendering or failure to render any professional service." (*Id.*)

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must

view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

Further, the "rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). Thus, the filing of cross-motions for summary judgment by both parties does not require that if one party's motion is denied, the opponent's motion must therefore be granted. *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (D.N.J. 1968) (citing *F.A.R. Liquidating Corp. v. Brownell,* 209 F.2d 375, 380 (3d Cir. 1954)).

### III. DISCUSSION

#### A. Applicable Law

Under Pennsylvania law, the interpretation of the scope of coverage of an insurance contract is a question of law for the court. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). "The goal of insurance contract interpretation is to ascertain the intent of the parties as manifested by the language of the policy." *Scottsdale Ins. Co. v. City of Easton*, 379 F. App'x 139, 143 (3d Cir. 2010). When the language of a policy is unambiguous, the court must give effect to that language, but ambiguous language is to be construed against the insurer. *Erie Ins. Exch. v. Conley*, WDA No. 1143, 2011 WL 3129388, at *2 (Pa. Super. Ct. July 27, 2011). The insured bears the initial burden of showing that a claim falls within the policy's coverage, but if the insured meets that burden, then the insurer must

demonstrate that a policy exclusion excuses the insurer from providing coverage. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009).

### 1. Duty to Defend

In determining whether an insurer owes a duty to defend, the court must compare the language in the underlying complaint with the language in the policy. *Id.* at 110. An insurance company has a duty to defend "when the complaint filed by the injured party may potentially come within the policy's coverage." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985); *Erie Ins. Exchange v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004). Further, "the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999).

### 2. Duty to Indemnify

Under Pennsylvania law, the duty to defend is "much broader than an insurer's duty to indemnify." *Muff*, 851 A.2d at 926. A "duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause." *Linn*, 766 F.2d at 766; *see also Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). The duty to indemnify "arises only if it is established that the insured's damages actually are covered by the terms of the policy." *W. Am. Ins. Co. v. Lindepuu*, 128 F. Supp. 2d 220, 225 (E.D. Pa. 2000).

**B.    The Policy Exclusions**

The parties do not dispute that absent the application of an exclusion, the policy would cover the negligence claim in the underlying lawsuit. However, American Western asserts that two exclusions preclude any obligation to defend or indemnify. Donnelly, on the other hand, argues that the exclusions do not apply to the underlying action.

### 1.   *The premises exclusion*

American Western contends that it has no duty to defend Donnelly because the premises exclusion precludes coverage for any of Donnelly's activities outside of its 1301-05 North Howard Street location, including Swanlund's accident. Donnelly asserts that its allegedly negligent activities had a sufficient connection with the subject premises to fall under the policy's coverage. The Court agrees with Donnelly, because when an insurance policy is susceptible to more than one possible interpretation, the provision must be "construed against the insurer and in favor of the insured." *Watkins*, 198 F.3d at 104. The premises exclusion states that coverage only applies to "'bodily injury,' 'property damage,' [or] 'personal injury' and medical expenses *arising out of* the ownership, maintenance, or use" of the Howard Street location; the exclusion does not say that only events occurring at that location are covered. (*See* Insurance Policy (emphasis added).) Construing both Swanlund's allegations and the language of the exclusion in favor of Donnelly, the insured, Swanlund's accident potentially "arose out of" Donnelly's activities at 1301-05 North Howard Street. Where a policy contains "arising out of" language, courts must consider "whether there is a causal connection between the property and underlying incident." *Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky*, 889 A.2d 557, 563 (Pa. Super. Ct. 2005). Specifically, when "construed strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by." *Id.* (quoting *Roman Mosaic & Tile v. Aetna Cas. and Sur.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997)). As Donnelly points out, "1301-05 N. Howard Street, the insured premises, is directly involved with Donnelly's paper distribution business," which is sufficient to demonstrate a causal connection. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 8.) Accordingly, American Western may not disclaim a duty to defend based on the premises exclusion. *See UPS Freight v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh,* App. A. Nos. 08-4350, 08-4421, and 08-4422, 2011 WL 1659350, at *5 (3d Cir. May 3, 2011) (holding that an "arising out of" premises exclusion did not limit coverage to a defined area, and "but for causation, i.e., a cause and result relationship, is enough to satisfy this provision of an insurance policy" (quoting *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961))). American Western argues that the underlying Swanlund litigation does not allege a "causal connection" or "but for" causation between Donnelly's alleged negligence and the Howard street location. (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 9.) However, in construing this exclusion against American Western, it is sufficient that Donnelly's allegedly negligent activities may have had a connection with the subject premises. *See Air Prods. & Chems., Inc. v. Hartford Accident & Indemn. Co.*, 25 F.3d 177, 179 (3d Cir. 1994) (finding insurer's duty to defend insured when "the allegations in the complaint . . . could potentially fall within the coverage of the policy").

### 2. *The professional services exclusion*

American Western also argues that Swanlund's allegations involve the distribution of circulars, which is precluded by the professional services exclusion because the exclusion includes the term "Paper Distributor." (Pl.'s Mem. in Supp. of Mot. for Summ. J. 7.) If Swanlund's claim is specifically excluded from coverage, then American Western has no duty to defend or indemnify Donnelly in the Swanlund action. Donnelly, however, maintains that American Western's interpretation of the professional services exclusion—excluding activity involving the distribution of paper circulars—would result in an absurdity by excluding from coverage all activities in which Donnelly is involved. (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 3.) American Western responds that the policy would cover tortious conduct occurring at the Howard Street property not involving the distribution of circulars, such as a slip-and-fall on Donnelly's sidewalk. (Pl.'s Resp. Br. in Opp.

to Def.'s Mot. for Summ. J. at 3.)

The Court finds American Western's interpretation lacks merit. Swanlund's allegations demonstrate that Donnelly's alleged activities may fall outside of the professional services exclusion. The policy does not define "professional services," but the Third Circuit has provided the following guidance regarding the term:

> Something more than an act flowing from mere employment or vocation . . . the act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "professional" means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

*Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 984 (3d Cir. 1988) (collecting cases). The underlying complaint alleges that Donnelly employees left plastic ties remaining on the street after they delivered the papers, creating a hazard for pedestrians. (Civil Compl. ¶¶ 5, 7.) This activity is "physical or manual," rather than "predominantly mental or intellectual." *Cf. Harad*, 839 F.2d at 984 (holding that a professional services exception applied to a lawsuit against an attorney for malicious prosecution); *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 564 (3d Cir. 2001) (holding the professional services exclusion precludes coverage only for a faulty design, as opposed to a faulty manufacture, given its "associat[ion] with a specialized knowledge and a mental or intellectual endeavor, not production, manufacture or supply of goods and manufacturing") (internal quotation marks omitted); *Cincinnati Ins. Co. v. Stonebridge Fin. Corp*, Civ. A. No. 10-4131, 2011 WL 2549975, at *6 (E.D. Pa. June 23, 2011) (holding that a professional services

exception applied where a financial institution was sued regarding loan commitment agreements).

Inclusion of "Paper Distributor" in the description of the professional services exclusion demands that any interpretation of the exclusion must encompass the "predominantly mental or intellectual" aspects of Donnelly's paper distribution activities, not the entirety of Donnelly's business operations. Furthermore, even if the underlying complaint's allegations encompass some activities that could be categorized as "professional," such as managerial activities, "[w]here an underlying complaint against the insured raises both covered and non-covered claims, the insurer must defend the entire action until the insurer proves that no underlying claim is covered by the policy." *Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 452 (M.D. Pa. 2007) (citing *Allen*, 692 A.2d at 1095). Accordingly, the professional services exclusion does not excuse American Western from defending or indemnifying Donnelly. *See Air Prods. & Chems.,* 25 F.3d at 179 (holding that when the allegations in the underlying complaint "may or may not fall within [an] exclusion . . . the insurer is required to defend.").

**IV.   CONCLUSION**

Because neither exclusion applies, American Western has a duty to defend Donnelly in connection with the Swanlund action. Given the settlement of the Swanlund action, American Western has a duty to indemnify Donnelly for amounts it is obligated to pay under the terms of the settlement agreement. *See Linn*, 766 F.2d at 766 (finding that insurer's duty to defend became a duty to indemnify when "settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed"). The Court denies American Western's motion and grants Donnelly's motion for summary judgment. An appropriate Order will be docketed separately.